**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JILL FLYNN,**<br><br>        *Plaintiff,*<br><br>    v.<br><br>**OMNI HOTELS MANAGEMENT CORP.**<br><br>**and**<br><br>**MARK ROCHE-GARLAND,**<br><br>        *Defendants.* | **Case No. 1:19-CV-01239-TSC** |

### DEFENDANTS OMNI HOTELS MANAGEMENT CORPORATION AND MARK ROCHE-GARLAND'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION

Plaintiff Jill Flynn's ("Plaintiff" or "Ms. Flynn") claims in the instant matter are subject to an individual arbitration agreement ("the Agreement") into which she entered during her employment with Omni Hotels Management Corporation ("Omni"). The Agreement covers disputes arising out of the employment relationship and pertains to claims brought against both Omni and individual managers or supervisors employed by Omni for alleged acts or omissions in the course of their employment. Accordingly, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"), this Court should grant Defendants' Motion to Compel Arbitration, stay the proceedings in the instant litigation or, in the alternative, dismiss this matter for lack of subject matter jurisdiction, and order the parties to proceed to individual arbitration pursuant to the binding arbitration agreement executed by the Plaintiff.

### FACTUAL BACKGROUND

Ms. Flynn accepted employment with Omni and began working at the Omni Shoreham in or about 2013. (*See* ECF 1. ¶ 10.) In connection with her employment with Omni, Ms. Flynn

entered into a Mutual Agreement to Arbitrate Claims On An Individual Basis and Summary of the Amended and Restated Alternative Dispute Resolution Program. (*See* Agreement Summary, a copy of which is attached hereto as Exhibit A.) The Agreement Summary also incorporated by reference the full Omni Hotels & Resorts Amended and Restated Alternative Dispute Resolution Program (hereinafter "the Program Document" and collectively, the "Arbitration Agreement"). (*See* Program Document, attached as Exhibit B.) Ms. Flynn signed the Agreement Summary on April 12, 2016, acknowledging therein that she was entering into the Arbitration Agreement and "knowingly and voluntarily" waiving her right to a jury trial on any of the claims covered under the Arbitration Agreement, and also acknowledging that the purpose of entering into the Arbitration Agreement was "to gain the benefits of a speedy, impartial and cost-effective dispute resolution procedure." (*See* Ex. A at 1.)

By signing the Agreement Summary adopting the Program Document, which sets forth the full details of the arbitration program, Ms. Flynn acknowledged and agreed that:

- Omni is engaged in interstate commerce. (*See* Ex. B at 2, ¶ 4.1.)

- The Federal Arbitration Act governs "the interpretation, enforcement, and all proceedings pursuant to this Program." (*See* Ex. B at 2, ¶ 4.1.)

- Omni and Ms. Flynn both knowingly and voluntarily waive their rights to a trial by jury or before a judge. (*See* Ex. B at 2, ¶ 5.)

- The mutual promises and covenants stated in the Program, as well as Ms. Flynn's continued employment with Omni, constitute consideration for the Agreement.

- "For claims covered by the Program, arbitration on an individual basis is *the parties' exclusive remedy*." (*See* Ex. B at 4, ¶ 13) (emphasis added.)

2

In the Agreement, Ms. Flynn and Omni specifically agreed to submit employment disputes to arbitration pursuant to the Federal Arbitration Act. (*See* Ex. A at 1.) Indeed, Ms. Flynn agreed that arbitration was to be her exclusive remedy for claims covered by the Arbitration Agreement. (*See* Ex. B at 3, ¶ 13.) Despite this clear agreement, on April 29, 2019, Ms. Flynn filed a civil action in this Court alleging that Defendants discriminated against her based on her sex in violation of the District of Columbia Human Rights Act and the Equal Pay Act; that Defendants retaliated against her in violation of the District of Columbia Human Rights Act and the Equal Pay Act; and that her employment was constructively terminated. (*See* ECF 1 at. ¶¶ 51-53, 55-58, 60-63, 65-68, 70-73, 75-78.)

All of Ms. Flynn's claims are subject to arbitration pursuant to the terms of the Arbitration Agreement, which states in pertinent part:

> The Company and the Associate hereby consent to the resolution by arbitration on an individual basis of all claims or controversies arising out of or in connection with Associate's application with, employment with, or termination from, the Company.
>
> . . .
>
> This Agreement is mutual, encompassing all claims the Associate may have against the Company or that the Company may have against the Associate, except as explicitly stated in the Program. The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation due; claims for breach of any contract, express or implied; tort claims; claims for discrimination, harassment or retaliation of any kind; and claims for violation of any federal, state or other statute, ordinance, regulation, or common law.

(*See* Ex. A at 1.)

The Program Document identifies the covered claims in even greater detail, stating:

> The claims covered by this Program include, but are not limited to, claims for standard wages, overtime wages, benefits, *equal pay*, or other compensation due; claims for breach of any

3

>   contract, express or implied; personal injury or employment related tort claims (including claims for negligence, gross negligence, intentional harm); claims for *discrimination harassment or retaliation of any kind – including without limitation harassment or discrimination based on gender,* race, nationality, ethnicity, disability, religion, age or any other status protected under applicable law; and claims for violations of any federal or state statute or common law or regulation.

(*See* Ex. B at 1, ¶ 2) (emphasis added).

In short, all of Ms. Flynn's claims – which center upon equal pay, sex discrimination, and retaliation – are covered by the Arbitration Agreement as it is set forth in the Program Document and the Agreement Summary. Moreover, as the Agreement Summary notes, the only claims to which the Arbitration Program does *not* apply are those specifically referenced in the Program Document: namely, claims for workers' compensation or unemployment compensation benefits; any criminal complaints or related criminal proceedings; claims based upon an associate benefit or pension plan containing its own arbitration provision; and claims that are expressly covered by the provisions of a collective bargaining agreement. (*See* Ex. B at 1, ¶ 3.) None of these carve-outs apply to Ms. Flynn's individual equal pay, sex discrimination, or retaliation claims. Indeed, Ms. Flynn's claims fall squarely within the types of claims the Arbitration Agreement expressly covers.

The Arbitration Agreement also makes clear that it applies not only to Omni, but also to Defendant Mark Roche-Garland, as an employee of Omni. Specifically, the Arbitration Agreement explains: "[t]he parties hereto agree that all references to the 'Company' in this Agreement will include Omni Hotels Management Corporation and Allegiance Hospitality Company, L.L.C., and all of their related subsidiary and affiliated entities, *and the former, current and future officers, directors and employees of all such entities*[.]" (*See* Ex. A at 1) (emphasis added.) The Program Document reinforces this, explaining that "[a]ll references to

4

the 'Company' in this Agreement shall include . . . all former, current and future officers, directors and employees" of Omni and its related entities. (*See* Ex. B at 1, ¶ 1.) Ms. Flynn's claims against Mr. Roche-Garland relate to her employment and arise under the same nucleus of operative fact as her claims against Omni. Accordingly, under the terms of the Agreement, all of the claims Ms. Flynn is seeking to advance against Omni and Mr. Roche-Garland are covered by the Arbitration Agreement and subject to arbitration for Ms. Flynn's exclusive remedy.

## LEGAL ARGUMENT

### A. PLAINTIFFS' AGREEMENTS TO ARBITRATE THE CLAIMS IN THIS LAWSUIT ARE ENFORCEABLE UNDER THE FAA.

It is well settled that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to agreements to settle disputes in both state and federal courts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001). Congress enacted the FAA to reverse judicial hostility to arbitration agreements and to "place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-22 (1985). Section 2 of the FAA makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C. § 2). The FAA reflects an emphatic federal policy favoring arbitration and the enforcement of arbitration agreements according to their terms. *Gilmer*, 500 U.S. at 26; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26, 631 (1985); 9 U.S.C. §§ 2-4. Indeed, the Supreme Court has recently reiterated the validity of employment arbitration agreements. *Epic Systs. Corp. v. Lewis*, 138 S.Ct. 1612 (2018). The FAA applies to arbitration agreements in any contract affecting interstate commerce. *Circuit City Stores, Inc.*, 532 U.S. at 119.

The Supreme Court has held that mandatory arbitration agreements between employers and employees required as a condition of employment are enforceable under the FAA. *Circuit City Stores*, 532 U.S. at 123. In *Circuit City Stores*, the Supreme Court considered whether the arbitration component of Circuit City's "Associate Issue Resolution Program" was enforceable under the FAA. *Id.* The Court concluded enforcement was appropriate and then recognized the benefits of arbitrating employment disputes: "[F]or parties to employment contracts… there are real benefits to the enforcement of arbitration provisions. We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context. Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation[.]" *Id.* at 122-123 (internal citations omitted); *see also Gilmer*, 500 U.S. at 26-31 (noting that agreements to arbitrate in the employment context are valid).

Indeed, the FAA creates a strong presumption in favor of enforcing arbitration agreements and requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Sheet Metal Workers' International Association v. United Transportation Union,* 767 F. Supp. 2d 161, 169 (D.D.C. 2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)). *See also Shearson/Am. Express, Inc. v. McMahon,* 482 U.S. 220, 226-227 (1987) (requiring courts to "rigorously enforce agreements to arbitrate"); *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 122 (2001) ("Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts.").

Section 2 of the FAA states that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(*See* 9 U.S.C. § 2.)

The FAA's provisions are mandatory: courts must compel arbitration when a valid arbitration agreement exists. *See Hercules & Company, LTD v. Beltway Carpet Service, Inc.*, 592 A.2d 1069, 1072 (D.C. 1991) (quoting *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) ("The Supreme Court has held that the federal arbitration act '[b]y its terms . . . leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.") (emphasis in original).

An arbitration agreement is enforceable under the FAA if it is: (i) part of a contract or transaction involving interstate commerce; and (ii) valid under general principles of contract law. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-501 (4th Cir. 2002). As explained below, the Agreement to arbitrate the claims at issue here satisfies both of these elements and therefore is enforceable under the FAA.

### 1. The Agreement is Enforceable Under The FAA, Because it is Part of a Transaction Involving Interstate Commerce And The Parties Expressly Agreed That The FAA Would Apply.

The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the Commerce Clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-81 (1995). Accordingly, the determination of whether a

transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* A matter "involves" commerce under the FAA if it simply "affects" commerce – a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* at 274. The United States Supreme Court reiterated all of the above points in *Circuit City*, 532 U.S. at 113-19.

Omni's business affects interstate commerce. Omni is headquartered in Dallas, Texas, and employs individuals across the United States – reflecting its goal to provide luxury accommodations with an authentic local spirit in business travel centers and leisure destinations across North America. Omni caters to the needs of individuals, families, business travelers, and corporations with the help of its network of committed associates. Some Omni employees travel to states other than the District of Columbia to perform work – including members of Plaintiff's sales and marketing team, who were expected to travel to other geographic regions of the country, where they were responsible for generating business. Plaintiff herself was responsible for driving sales at the Omni Shoreham, a role which required her to have contacts with individuals and organizations located all over the country who were planning travel to the District of Columbia for events. Given these facts, Plaintiff's employment with Omni clearly constituted a "transaction" affecting interstate commerce. *See, e.g.*, *Circuit City*, 532 U.S. at 113-19.

Moreover, even if this Court found that Omni's business did not affect interstate commerce, which it does, this Court must nevertheless compel arbitration because the Parties expressly agreed that the FAA would apply to the Agreements. (*See* Ex. A at 1.) Namely, Plaintiff acknowledged that "the Company is engaged in transactions involving interstate

commerce. Except as provided or under the Program, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement[.]" (*See* Ex. A at 1.) Accordingly, in light of Plaintiff's agreement that the Federal Arbitration Act governs the Arbitration Agreement, the Court should apply the FAA's mandatory terms and order arbitration of the claims presented in the instant action.

### 2. The Arbitration Agreement Is Valid And Enforceable Under General Principles Of Contract Law and Plaintiff's Claims Fall Squarely Within The Scope of The Agreement.

An arbitration agreement's validity is determined by reference to general principles of contract law. *See Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 685 (1996) (noting that "[s]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.") (internal quotations and citations omitted).

Plaintiff's Agreement is valid and enforceable. The Agreement is in writing and Plaintiff signed it. (*See* Ex. A; Ex. B.) *See also Wolff v. Westwood Management LLC,* 503 F. Supp. 2d 274, 280 (D.D.C. 2007) (holding that a signature on an arbitration agreement indicates mutuality of assent and a party is bound by the agreement unless he or she can show specific circumstances relieving him or her of such an obligation), *aff'd*, 558 F.3d 517 (D.C. Cir. 2009). In addition, as set forth above, the Agreement states that it applies to claims concerning wages and to disputes over alleged discrimination or retaliation, among other types of employment-related claims. (*See* Ex. A at 1.) As Plaintiff alleges in her Complaint that Defendants Omni and Mr. Roche-Garland discriminated and retaliated against her in violation of the District of Columbia Human Rights Act and the Equal Pay Act, the Agreement clearly covers her claims. (*See generally* ECF 1.)

Moreover, the Agreement itself has been enforced recently in a nearby jurisdiction. In *Johnson v. Omni Hotels Management Corporation*, No. 5:18-cv-00083-EKD, Judge Dillon of the United States District Court for the Western District of Virginia granted Omni's motion to stay the litigation proceedings and ordered the parties to proceed to arbitration under the Arbitration Program. On October 26, 2018, the Judge ruled from the bench, referring the parties to arbitration and staying the proceedings. (*See* Johnson Docket, attached as Exhibit C, at Entry No. 23.) The Court followed up on April 2, 2019, ordering the parties to provide a status update on the arbitration proceedings after Plaintiff's counsel sought and received permission to withdraw. (*See Johnson*, *supra* (W.D.V.A. Apr. 2, 2019), attached as Exhibit D.) In short, this very Arbitration Program has been recognized as enforceable and arbitration proceedings have been ordered by other federal courts under its auspices.

**B.** **THE COURT SHOULD STAY THIS CASE PENDING THE OUTCOME OF ARBITRATION BETWEEN THE PARTIES OR, IN THE ALTERNATIVE, DISMISS THE CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

Pursuant to the FAA, this Court should stay the case pending the outcome of arbitration or, in the alternative, dismiss the case for lack of subject matter jurisdiction. Section 3 of the FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

(*See* 9 U.S.C. § 3.)

This provision requires the trial court to stay judicial proceedings where the issue presented is subject to arbitration under an agreement to arbitrate. The FAA leaves the trial court

no discretion on this point; rather, it mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists.  9 U.S.C. §§ 3, 4.  Accordingly, under § 3 of the FAA, this lawsuit should be stayed and the Court should issue an order compelling arbitration pursuant to the Agreement.  Alternatively, because the parties have agreed to arbitration, the Court should dismiss this lawsuit for lack of subject matter jurisdiction.  *See Collie v. Wehr Dissolution Corp.*, 345 F. Supp. 2d 555, 562-63 (M.D.N.C. 2004) (dismissing, pursuant to Rule 12(b)(1), claims within the scope of an arbitration agreement); *Dalton v. Jefferson Smurfit Corp. (U.S.)*, 979 F. Supp. 1187, 1192 (S.D. Ohio 1997) ("[A] motion to dismiss premised upon the argument that a plaintiff's claim must be submitted to arbitration is properly analyzed under Rule 12(b)(1)").

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, Omni and Mark Roche-Garland respectfully request that this Court grant their Motion, stay proceedings relating to Plaintiffs' claims or, in the alternative, dismiss Plaintiff's Complaint for lack of subject matter jurisdiction, and issue an order compelling arbitration pursuant to the FAA.

Respectfully submitted,

 /s/ Jaclyn L. West Hamlin
Jaclyn L. West Hamlin, D.C. Bar No. 989236
OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
1909 K Street NW
Suite 1000
Washington, DC 20006
(202) 887-0855
(202) 887-0866
jaclyn.hamlin@odnss.com

*Counsel for Defendants*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2019, a copy of the foregoing was filed with the Court's ECF system, which will notify the following counsel of record:

Les Alderman
Alderman, Devorsetz & Hora PLLC
1025 Connecticut Avenue, NW
Suite 615
Washington, DC 20036
Phone: (202) 969-8220
Fax: (202) 969-8224
E-mail: lalderman@adhlawfirm.com

*Counsel for Plaintiff*

/s/ Jaclyn L. West Hamlin
Jaclyn L. West Hamlin, DC Bar No. 989236
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, D.C. 20006
Tel.: (202) 887-0855
Fax: (202) 887-0866
jaclyn.hamlin@ogletree.com

*Counsel for Defendants*

38875921.3