UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JILL FLYNN,

    *Plaintiff*,

v.

OMNI HOTELS MANAGEMENT CORP., et al.,

    *Defendants*.

Civil Action No. 1:19-cv-01239 (CJN)

**MEMORANDUM OPINION**

Plaintiff Jill Flynn filed this action against Omni Hotels Management Corporation and Mark Roche-Garland, asserting various claims of discrimination and retaliation in violation of the D.C. Human Rights Act (DCHRA), D.C. Code §§ 2-1402.11, 2-1402.61, 2-1403.16 (2020), and the federal Equal Pay Act, 29 U.S.C. §§ 206, 215 (a)(3), 255(a) (2018). *See generally* Compl., ECF No. 1. Defendants move to compel arbitration and ask this Court to either stay or dismiss the case. *See generally* Defs.' Mot. to Compel Arbitration and to Stay Litigation or, in the Alternative, to Dismiss ("Mot."), ECF No. 5. Flynn opposes arbitration, raising arguments that fall into two main camps: (1) the arbitration agreement is not valid or enforceable; and (2) Defendants' post-litigation conduct precludes them from compelling arbitration. For the reasons discussed below, the Court grants Defendants' Motion in part, refers this proceeding to arbitration, and stays the action.

**I.    Background**

Flynn alleges that while she was working as director of sales and marketing at one of Omni's hotels, she learned she was being paid less than her male counterparts. *E.g.*, Compl. at

1

1–2. After complaining about the discriminatory pay policies, she was allegedly retaliated against, constructively terminated, and ultimately replaced by a man. *See id.* The facts relevant to this Motion, however, center on events that are unrelated to Flynn's claims. Rather, they pertain to the circumstances in which Flynn signed an arbitration agreement and the communications between the Parties' attorneys after the Complaint was filed about how this litigation would proceed.

Flynn was hired in 2013 as director of sales and marketing for the Omni Shoreham Hotel in Washington, D.C. *Id.* ¶¶ 6, 10. Around April 2016, the human resources director at the hotel, Don Frey, provided Flynn with a document entitled "Mutual Agreement to Arbitrate Claims on an Individual Basis and Summary of the Amended and Restated Alternative Dispute Resolution Program," Mot., Ex. A ("Agreement Summary"), ECF No. 5-2. Pl's Opp'n to Defs.' Mot. to Compel Arbitration ("Opp'n") at 1, ECF No. 7; Pl.'s Statement of Material Facts Demonstrating No Agreement to Arbitrate ("Pl.'s Material Facts") ¶ 1, ECF No. 7-10.[1] Flynn received a copy of the document, and she was instructed to sign it and obtain each of her team members' signatures. Opp'n at 1; Pl.'s Material Facts ¶¶ 2, 4. Flynn claims Frey told her the document was related to collective bargaining and union matters that largely did not concern her team and that she signed it without reading it. Opp'n at 2; Pl.'s Material Facts ¶¶ 5, 7. The document instructed signatories to "review the Omni Hotels Amended and Restated Alternative_Dispute [sic] Resolution Program" ("Program Document," ECF No. 5-3), which contained the terms by

---

[1] As discussed below, a motion to compel arbitration is subject to the summary judgment standard. Because Defendants did not file their own statement of material facts and do not appear to dispute the facts recited by Plaintiff, the facts related to the underlying dispute are taken from the Complaint, while the facts surrounding the contract's formation, enforceability, and any potential waivers are taken from Plaintiff's Opposition, Statement of Material Facts, and supporting exhibits.

which disputes would be resolved and was accessible on Omni's intranet. Agreement Summary at 3 (all caps typeface removed).

Around summer 2017, then-vice president of operations for Omni Hotels, Jon Hunter, remarked that Flynn was fortunate to be one of the highest-paid women in the organization, which Flynn took to mean that there was a two-tiered salary system in which women were subject to a lower salary tier. *See* Compl. ¶¶ 24–25; *see also* Opp'n at 2. Flynn eventually complained about this comment to the regional director of sales and marketing and claimed she was entitled to a salary increase. Compl. ¶ 31; *see also* Opp'n at 2. Flynn felt that she was being retaliated against for speaking out against Hunter's comments, and in March 2018, she discussed her retaliation concerns with the president of Omni Hotels & Resorts. Compl. ¶ 36, *see also* Opp'n at 2. Two days later, Flynn's supervisor, Defendant Roche-Garland, placed her on a performance improvement plan; three months later, Roche-Garland told Flynn she was going to fail the plan and gave her the option of resigning or being terminated. Compl. ¶¶ 38, 44–45; *see also* Opp'n at 2.

Flynn felt her only choice was to resign, which she did, Compl. ¶ 46; *see also* Opp'n at 2, and on April 29, 2019, she filed this lawsuit. On May 28, 2019, Omni's counsel contacted Flynn's counsel, seeking an extension to file a responsive pleading in part because they had just been retained. *See generally* Opp'n, Ex. 5, ECF No. 7-5. Flynn consented to the extension, *see id.*, and the next day, Omni filed its Consent Motion for Extension of Time to Respond to Plaintiff's Complaint, ECF No. 3, which was granted, *see* Min. Order (May 29, 2019).

On June 11, defense counsel notified Flynn's counsel that Defendants were prepared to enforce the agreement to arbitrate that Flynn had executed.[2] Opp'n at 3; Opp'n, Ex. 6, ECF No. 7-6. Sure enough, the next day, Defendants filed their Motion to Compel, which Flynn opposes.

## II. Legal Standard

A motion to compel arbitration is "properly examined . . . under the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (citations omitted). Review "is limited to 'whether or not there [was] a meeting of the minds on the agreement to arbitrate.'" *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 179 (D.D.C. 2015) (alteration in original) (citation omitted). Defendants, as the Parties seeking to compel arbitration, "must first present 'evidence sufficient to demonstrate an enforceable agreement to arbitrate.'" *Fox v. Comput. World Servs. Corp*, 920 F. Supp. 2d 90, 96 (D.D.C. 2013) (citation omitted). "The burden then shifts to [Plaintiff] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in [Rule] 56." *Id.* (citation omitted).

## III. Analysis

Flynn concedes that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, governs this dispute, *see*, *e.g.*, Opp'n at 14, 31 (citing to the FAA), but opposes arbitration nonetheless. In her attempt to avoid arbitration, Flynn employs the kitchen-sink approach and raises no fewer than seven different arguments. Flynn attacks the formation and validity of the arbitration agreement itself, *id.* at 17–42, and argues Defendants cannot compel arbitration based on their conduct in the early stages of this litigation, *id.* at 8–17. The Court takes these arguments in turn.

---

[2] While the Parties' attorneys corresponded about the existence of an arbitration agreement, it appears that defense counsel mistakenly sent Flynn's counsel the California Program Document, Opp'n, Ex. 8, ECF No. 7-8, instead of the operative agreement, Opp'n, Ex. 9, Ex. 7-9.

4

### A. The Validity of the Arbitration Agreement

Flynn argues that: (1) she is entitled to rescind the arbitration agreement due to a misrepresentation, *id.* at 17–19; (2) Defendants failed to establish the existence of a binding agreement to arbitrate, *id.* at 19–23; (3) there was no agreement as to material terms, *id.* at 24–31; (4) assuming there was an agreement to arbitrate, it is unenforceable, *id.* at 31–40; and, correspondingly, (5) the lack of a savings clause means the entire agreement should be struck down, *id.* at 40–42. Such "attacks on arbitration 'res[t] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants,' and as such, they are 'far out of step with . . . [the Supreme Court's] . . . strong endorsement of the federal statutes favoring this method of resolving disputes.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (first alteration in original) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 481 (1989)); *see also Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 89 (2000). Against this backdrop, the Court will briefly address Flynn's numerous arguments.

Flynn argues she is entitled to rescind the arbitration agreement because Omni obtained her signature through a misrepresentation of a material fact. Opp'n at 17–19. Under D.C. law, which the Parties agree governs here, *see, e.g.*, Opp'n at 9; Defs.' Reply Br. in Supp. of their Mot. ("Reply") at 4, ECF No. 10, the recipient of a misrepresentation may rescind a contract, even where the misrepresentation was made innocently. *Barrer v. Women's Nat'l Bank*, 761 F.2d 752, 757–58 (D.C. Cir. 1985). As Flynn concedes, to succeed on a claim of innocent misrepresentation,

> [t]he recipient of the alleged misrepresentation must demonstrate that the maker made an assertion: (1) that was not in accord with the facts, (2) that was material, and (3) that was relied upon (4) justifiably by the recipient in manifesting [her] assent to the

> agreement. District of Columbia law adds a fifth condition, i.e., that
> the recipient relied to [her] detriment.

*Id.* at 758 (cited in Opp'n at 18).

Flynn contends that Frey misrepresented to her that the arbitration agreement "primarily dealt with union matters that did not involve her or her group," and as a result, she signed the agreement without reading it. Opp'n at 18; Pl.'s Material Facts ¶ 7. As an initial matter, Flynn does not devote much time to explaining whether Frey's statements are attributable to Omni itself. Even assuming Frey's statement qualifies as a material misrepresentation by Omni, Flynn is still unable to show that her reliance on his statement was justified. Where the recipient of an alleged misrepresentation "*should have discovered its falsity by making a cursory examination*, [her] reliance is clearly not justified and [s]he is not entitled to relief." *Resolution Tr. Corp. v. District of Columbia*, 78 F.3d 606, 609 (D.C. Cir. 1996) (quoting Restatement (Second) of Contracts § 172 cmt. b (Am. Law. Inst. 1979)) (rejecting misrepresentation argument and opining that "a cursory examination of . . . language in [a] three-page estoppel certificate should have alerted" and "put a reasonable person on notice" of the nature of the transaction at issue).

By Flynn's own admission, Frey told her "that the document related primarily to collective bargaining and union matters, and that *in most cases* it did not apply to [Flynn's] team." Decl. for Jill Flynn ¶ 5, ECF No. 7-2 (emphasis added). Even if that statement could be viewed as misleading, the caveat that the agreement could apply to Flynn and her team in *some* cases should have prompted at least a cursory examination of the document. And because such a cursory examination by Flynn—who by her own allegations was a relatively senior and sophisticated employee—of the two-page document would have revealed its applicability to her, her reliance on Frey's alleged misstatement was not justifiable. *See Brown v. Dorsey & Whitney, LLP.*, 267 F. Supp. 2d 61, 81–82 (D.D.C. 2003) (recognizing that "courts dealing with similar

situations have taken the education and background of the employee into account in determining whether the employee should be bound by an arbitration agreement" and discussing case compelling arbitration agreement that "was only two pages long" (citations omitted)); *cf. Cadet v. Draper & Goldberg, PLLC*, No. CIV 05-2105, 2007 WL 2893418, at *12 (D.D.C. Sept. 28, 2007) (dismissing misrepresentation claim related to property bid where plaintiffs "did not make any reasonable investigation" of property, such as performing title search or physically inspecting property).

Flynn also argues that Defendants have not identified the necessary consideration and material terms, Opp'n at 19–23, and, relatedly, that there was no agreement as to all material terms, *id.* at 24–31. These arguments rest primarily on the fact that Defendants' opening brief did not spell out why the arbitration agreement satisfied each element of contract formation. But Defendants argued there was a binding and enforceable contract under the FAA that subjects Flynn's claims to arbitration and included as exhibits both the signed agreement and the Program Document. *See generally* Defs.' Mem. of P. & A. in Supp. of Mot., ECF No. 5-1; Mot., Exs. A–B. That is certainly sufficient for an opening brief. *See Booker v. Robert Half Int'l, Inc.*, 315 F. Supp. 2d 94, 100 (D.D.C. 2004) ("Under District of Columbia law, a signature on a contract indicates 'mutuality of assent' and a party is bound by the contract unless he or she can show special circumstances relieving him or her of such an obligation." (some internal quotation marks and citation omitted)), *aff'd* 413 F.3d 77 (D.C. Cir. 2005); *see also Ekedahl v. COREStaff, Inc.*, 183 F.3d 855, 858 (D.C. Cir. 1999) ("Proof of a meeting of the minds may be found . . . in the written agreement . . . ."). Defendants were not obligated to anticipate and preemptively respond to any and all of the arguments Flynn might make. And Defendants ultimately identified as consideration the contracting parties' mutual obligation to arbitrate disputes, Reply at 4–5, and

7

also pointed to the material terms outlined in the Program Document that was incorporated by reference into the document Flynn signed, *id.* at 9–10; Mot., Exs. A–B.

Flynn pivots and disputes that the Program Document was incorporated by reference into the document she signed and that she agreed to be bound by the Program Document. Opp'n at 24–31. But the relevant text of the document Flynn signed—which was set apart in all caps typeface—is clear: it obligates Flynn to "REVIEW THE OMNI HOTELS AMENDED AND RESTATED ALTERNATIVE_DISPUTE [sic] RESOLUTION PROGRAM WHICH CONTAINS ALL OF THE TERMS UNDER WHICH DISPUTES WILL BE RESOLVED UNDER THE PROGRAM" and specifies that "THE PROGRAM DOCUMENT IS INCORPORATED BY REFERENCE INTO THIS AGREEMENT." Agreement Summary at 3. Flynn argues that the document she signed was not sufficiently specific to incorporate the entire Program Document, Opp'n at 26–27, but this contention is implausible and belied by the contract's "clear contractual language." *Mawakana v. Bd. of Tr. of Univ. of D.C.*, 113 F. Supp. 3d 340, 348 (D.D.C. 2015). The agreement notified Flynn of the company's dispute resolution program and served as "only a summary of the Program," Agreement Summary at 2, while the details of the program and resolution mechanisms themselves were specified in the Program Document, which was expressly "incorporated by reference into [the] agreement,"[3] *id.* at 3 (all caps typeface removed).

---

[3] Flynn also argues that the arbitration agreement could not incorporate the Program Document because the agreement "purported to be effective immediately upon [her] signature," on April 12, 2016, while the Program Document was not to be effective until May. Opp'n at 29. But she does not explain how the arbitration agreement, which summarized the parameters of the forthcoming program, purported to be effective immediately. Regardless, it is hardly of relevance here where the relevant misconduct occurred well after the effective date.

8

Flynn further attacks the agreement to arbitrate as unconscionable or illusory, objecting to its confidentiality provision, limits on discovery, and Omni's unilateral ability to modify the rules governing arbitration proceedings. Opp'n at 31–40. Because Flynn is "resisting arbitration on the ground that the terms of an arbitration agreement interfere with the effective vindication of statutory rights[, she] bears the burden of showing the likelihood of such interference." *Booker*, 413 F.3d at 81. Such a burden cannot be met by "'mere speculation' about how an arbitrator 'might' interpret or apply the agreement." *Id.*

To be sure, a court may void a contract on grounds of unconscionability if the contract was both procedurally and substantively unconscionable. *See Fox*, 920 F. Supp. 2d at 97 (citing *Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983) (other citations omitted)). But Flynn does not even explain how the agreement was procedurally unconscionable, which should end the matter.[4] *See Urban Invs*, 464 A.2d at 99 ("Usually, the party seeking to avoid the contract must prove both elements: an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (internal quotation marks and citation omitted)). Although "in an egregious situation, [either procedural or substantive unconscionability] may suffice," *id.* (citation omitted), this is not that situation: Flynn's arguments that the program's confidentiality provision and discovery limits are substantively unconscionable are unavailing.

---

[4] Flynn avers generally that "there are problems from a procedural viewpoint," Opp'n at 41, but she does not actually argue that the manner in which the Parties executed the agreement was unconscionable. Rather, her procedural contentions (e.g., the alleged misrepresentation related to the agreement and Omni neglecting to provide her with a copy of the signed agreement) appear in a later section where she argues that the "offending provisions" of the contract are so "pervasive[]" that the entire agreement should be "stricken." *Id.* at 40, 42.

The Parties' briefing on the confidentiality question is not particularly helpful as they largely rely on out-of-circuit decisions. And although the Supreme Court's decision in *Gilmer v. Interstate/Johnson Lane Corp.* highlights some potential problems with confidentiality provisions in the analogous Age Discrimination in Employment Act (ADEA) context, the Court did not go so far as to hold that such provisions are necessarily unconscionable. 500 U.S. at 31–32. In fact, the Court observed more generally that public policy concerns surrounding arbitration are ameliorated by the reality that "judicial decisions addressing ADEA claims will continue to be issued because it is unlikely that all or even most ADEA claimants will be subject to arbitration agreements," further noting that such concerns about confidentiality apply "equally to settlements[,] . . . which . . . are clearly allowed." *Id.* at 32.

The confidentiality provision here is not as broad as the "draconian" provisions that have been held unenforceable by other courts. Opp'n at 34 (quoting *Ting v. AT&T*, 182 F. Supp. 2d 902, 906 (N.D. Cal. 2002), *aff'd in part*, *rev'd in part*, 319 F.3d 1126 (9th Cir. 2003)). Those agreements prohibited plaintiffs from "disclos[ing] the existence, content or results of any arbitration or award except as may be required by law or to confirm and enforce an award," *Ting*, 182 F. Supp. 2d at 931, while the scope of *this* agreement is much narrower: the Parties are barred from disclosing the award only, *see* Program Document at 4. Omni readily admits that Flynn would be permitted to discuss "communications or other records or proof," Reply at 18, which mitigates the public policy concern that a victim of discrimination could not discuss his or her allegations with other victims, co-workers, or elected officials, Opp'n at 34.

Flynn's argument regarding limitations on discovery also fails. *Id.* at 34–37. Arbitration proceedings often have rules that vary from the discovery provisions in the Federal Rules of Civil Procedure. Indeed, that is a feature of arbitration, as it allows a party to "trade[]the

procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *See Gilmer*, 500 U.S. at 31 (internal quotation marks and citation omitted). Although in *Gilmer* the limits on discovery were countered by the inapplicability of the Federal Rules of Evidence—a counterbalance not present here—courts have since upheld arbitration agreements with varying discovery rules. *See, e.g.*, *Booker*, 413 F.3d at 82 (upholding discovery provision despite concerns that "arbitrator *might* provide inadequate discovery, *might* not order a needed conference, [or] *might* assign burdens of production or proof that do not vindicate statutory rights"); *Fox*, 920 F. Supp. 2d at 100 (enforcing agreement with provision that limited discovery to deposition of only one individual and any expert witness designated by another party and allowed additional discovery only upon showing of "substantial need").

Flynn finally argues that the arbitration agreement was illusory because it granted Omni unilateral powers of cancellation and modification without adequate notice. Opp'n at 37–40. As Defendants note, one court has already opined on these questions and rejected this very argument with respect to a similar Omni arbitration agreement. Reply at 19–20 (citing *Shatteen*, 113 F. Supp. 3d at 181 (D.D.C. 2015). For the same reasons expressed in *Shatteen*—including that the agreement prevents Omni from *retroactively* revoking employees' rights to arbitrate—the Court rejects the argument that this contract is illusory. 113 F. Supp. 3d at 180–81.

### B. Defendants' Litigation Conduct

Flynn's second set of arguments involves the circumstances that followed the filing of her Complaint. She argues that Defendants forfeited or waived their right to enforce arbitration or should otherwise be estopped from compelling arbitration because they did not invoke their right at the first available opportunity. She also contends that because Defendants did not alert her to the existence of the agreement to arbitrate until after the statute of limitations had run, she would be

11

prejudiced if she had to arbitrate her claims, which she believes would be deemed untimely. These arguments hold no water.

Forfeiture, "the failure to make a timely assertion of a right, . . . is the appropriate standard for evaluating a late-filed motion under . . . the FAA." *Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011). Flynn argues that Defendants presumptively forfeited the right to compel arbitration because they did not invoke it "on the record at the first available opportunity." Opp'n at 13 (quoting cases). But Flynn conveniently omits the rest of the D.C. Circuit's decision, which defines "the first available opportunity" as "typically [when a litigant] file[s] his first responsive pleading or motion to dismiss." *Zuckerman Spaeder*, 646 F.3d at 922.[5] Defendants' Motion for an Extension of Time was certainly not a responsive pleading. And as Flynn very well knows (based on the cases she herself cites), courts typically find that litigants have forfeited their right to arbitration only when they seek to compel arbitration after substantial litigation has progressed and the parties have incurred real costs. *See, e.g.*, *id.* at 922–24 (affirming denial of motion to compel where movant "had answered the complaint and moved the case from state to federal court, and from the court to mediation, all before filing his petition or even indicating he intended to arbitrate his claims"); *Lee v. PSI Servs. III, Inc.,* No. CV 18-1286, 2019 WL 131956, at *1–2 (D.D.C. Jan. 8, 2019) (denying motion to compel arbitration after defendants filed answers, requested mediation, and were referred to mediation and where plaintiff "incurred real costs and

---

[5] In various portions of their briefs, the Parties quibble over whether Defendants' Motion is a responsive pleading under the Federal Rules of Civil Procedure. Flynn argues that this is a motion to compel arbitration, Opp'n at 14 & 14 n.2, while Defendants insist that it is a "motion for a stay . . . or in the alternative, to dismiss," which qualifies as a responsive pleading, Reply at 14. This dispute is of little consequence here. If Flynn is right that Defendants' Motion is not a responsive pleading, then Defendants certainly could not have forfeited their right to compel arbitration as they have yet to file such a pleading. And if Defendants are right that their Motion is "[b]y definition" a responsive pleading, Reply at 14, then they did indeed invoke the right to arbitration at the first available opportunity.

expenses"). At the early stage of this case, where the Parties have not delved into the merits of the underlying dispute, it cannot be said that Defendants forfeited their right to arbitrate.

Defendants did not *waive* their right to arbitration, either. Waiver, in contrast to forfeiture, "refers to a party's 'intentional relinquishment or abandonment of a known right.'" *Zuckerman Spaeder*, 646 F.3d at 922 (citation omitted). Courts examine the "totality of the circumstances," including the potential prejudice to the non-moving party, in assessing "whether the defaulting party has acted inconsistently with the arbitration right." *Cho v. Mallon & McCool, LLC*, 263 F. Supp. 3d 226, 228 (D.D.C. 2017) (citations omitted). Flynn urges the Court to focus on how she was prejudiced by Defendants neglecting to mention the arbitration agreement until after their extension motion was granted. Opp'n at 15 (citing *Zuckerman Spaeder*, 646 F.3d at 992) (other citation omitted). According to Flynn, because Defendants requested an extension, they "pushed Plaintiff beyond the statute of limitations for her [DCHRA] claims," which would "require the arbitrator to dismiss those claims." *Id.* at 16.

Even if the Court were to conclude (despite Plaintiff's unpersuasive arguments) that Defendants acted inconsistently with their right to invoke arbitration, Flynn would not be prejudiced. As Defendants themselves acknowledge, Flynn's "DCHRA claim would be tolled during the pendency of this Motion and would relate back to the date of filing of the Complaint." Reply at 17. And because Defendants acknowledge this Court has jurisdiction to enter a stay while arbitration proceeds, it will do so, thereby eliminating Flynn's claimed concern that referring the matter to arbitration now would make untimely her DCHRA claims. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought . . . upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").

Flynn's equitable estoppel and unclean hands arguments[6] likewise fail. She takes issue with Omni's failure to disclose the existence of the arbitration agreement and the fact that Omni, prior to filing its Motion to Compel, appears to have mistakenly sent Flynn's counsel a different program document that had a more forgiving statute of limitations. Opp'n at 3–5. But because the statute of limitations is not a concern, this argument falls apart.

To summarize: Flynn's arguments based on Defendants' litigation conduct hinge on a communication related to an extension request and Omni's counsel's attachment of the wrong document to a communication involving arbitration. The Court will not concern itself with the "pre-trial huffery and puffery [where] a party may float all sorts of intentions, serious or not." *Zuckerman Spaeder*, 646 F.3d at 923. Instead, it looks "only [to] intentions placed upon the record." *Id.* And the record here indicates Defendants promptly asserted their right to arbitration; that Flynn's DCHRA claims are (or will be deemed) timely; and that Flynn will not be prejudiced by a stay pending arbitration.

### IV.     Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion to Compel Arbitration and to Stay Litigation or, in the Alternative, to Dismiss is **GRANTED IN PART**. The Court grants the motion to compel arbitration; denies the motion to dismiss; and stays this action pending arbitration. An Order will be entered contemporaneously with this Opinion.

---

[6] The doctrine of unclean hands refers to a "defense available 'where the plaintiff's misconduct occurred in connection with the same transaction that is the subject of her claim.'" *Hughes v. Abell*, 794 F. Supp. 2d 1, 11 (D.D.C. 2010) (quoting *Zanders v. Reid*, 980 A.2d 1096, 1101 (D.C. 2009)). Even assuming Flynn can invoke the doctrine to avoid arbitration, the alleged misconduct on Defendants' part is not connected to the formation of the contract, but to events post-dating this lawsuit.

DATE: April 2, 2020

_____
CARL J. NICHOLS
United States District Judge